Good morning to the panel. My name is Roberto Ruiz Gomez. I am the attorney for the appellant Vovac. I would like to center my argument on the point of the relevant market issue. It seems to me that the district court, in analyzing the scenario that was brought before them for it, discarded the evidence that we have proposed and brought into the case regarding the conception that in this particular case, what we were arguing was that there was a sub-market within the contours of the Boston Shoe case. The Boston Shoe case is a Supreme Court case. I probably know what the case is about. That case establishes the feasibility that to establish a relevant market, there could be a sub-market definition that could apply in that analysis. Assume that's so. The requirements for the sub-market, except for the scope of the market, would be the same as the requirements for the product market itself. What evidence do you have that you say the district court overlooked or undervalued that shows that there is, in either the product market or some sub-market, no cross-elasticity of demand among these different types of sewer systems? What I understand is that the Brown Shoe case established some parameters specifically… I didn't ask you what the case established. What I asked you was what evidence you had that showed that consumers in some relevant market viewed vacuum sewer systems as not interchangeable with gravity sewer systems and other types of sewer systems. I was going to answer that question precisely in the sense that even though the consumer word here is a particular industry, what we established in… No, no, but I didn't ask what we… I asked you what evidence. All right, but tell me the evidence before you tell me what it established. Well, the evidence is that we established that, first of all, that this was a unique market… No, no, no, you're missing my point. How do you establish something? You establish something by testimony, by an argument. What pieces of evidence do you want us to look at to evaluate whether you established a relevant market? The evidence that I believe that I set forth is, number one, the testimony of FLOVAC's president. Number two, the deposition testimony of most of the four persons that EIRVAC… Let's talk about the deposition testimony of the four FLOVAC executives. Well… Excuse me. The EIRVAC executives. Excuse me. Sorry. That testimony, as far as I can tell, is not mentioned or referred to in the statements of material facts in dispute that you filed in opposition to summary judgment. Well… That's a yes or no. It either is or it isn't. Well, it's not in the statement. Excuse me. Those same statements, as I recall it, were, the district court said, were not properly before the court under the local rule because of your failure to include them in the materials. Well, I sustain that I did, that there was materials in the evidence accompanying this statement of facts that would support my proposition. What do you mean in the evidence accompanying the… The evidence would be in the deposition statements that they were part of the exhibits in support of the issues of contested facts. Yeah, but the purpose of the statement of contested facts is so that the district court doesn't have to rummage through the record to determine whether or not there is an issue. You are required in those statements to identify, for example, this is a contested fact. Our version of this fact is supported by the deposition of John Jones, pages 6 to 7, etc. The district court said that you did none of that. I did that. The court, in my opinion, what it did was that it didn't find sufficient the evidence that I brought in those statements to consider that there was an establishment of a sub-market. In my brief, my opposing brief to the court, I did not mention, I did not cite Brown Shoe, and I did not specifically state the word sub-market. What I did, I did argue, particularly that in comparison to what EIRBAC was trying to establish, that this was part of a whole sewer system market, I did establish evidence, and it was set forth in the statement of contested facts, that in the specialized vacuum sewer system market, EIRBAC controlled 87% of the market. And that was brought forth in the case, in the argument before the opposition to summary judgment. What I did further in the evidentiary hearing that the court said after the reply to the motion for summary judgment was to cite Supreme Court decisions that would apply and that would allow the court to consider that there was a genuine issue of fact concerning whether it would apply the relevant market analysis concerning what EIRBAC sustained, that they are part of a wholesome sewer system market of what I sustained, which is... Counsel, counsel, tone it down. Come on. I'm sorry, you know, that's my fault. Yes, but you're in court now. I'm sorry. So what I'm trying to say is that our position was established in the hearing that Brown-Hsu allows the court to consider the sub-market analysis, and there was sufficient evidence in my view in the opposition for the motion for summary judgment to establish that that analysis would apply, and that at least, at least, there was a genuine issue that the court should not rule on a motion for summary judgment. But you're not implying, are you, that Judge Casayas didn't realize that there was a potential issue in the case as to a sub-market as opposed to a market? What I'm saying is... Excuse me. Could you just answer that question? Because as I recall Judge Casayas' opinion, he has a specific footnote saying that he doesn't think you've properly raised the sub-market issue, but that it wouldn't matter if you did, that even if he analyzed this case as a sub-market rather than a product market, the outcome would be the same. Well, he said that in a footnote. Yes. But what he said in the opinion and order was that I raised the argument that I was trying to shift gears by bringing that evidence for the first time in the initial hearing. What I submit and what I stated in my brief is that that evidence was set forth in the opposition to the motion for summary judgment, and the court disregarded that. You've only got a minute left. Let's go past this issue about whether you did or did not submit. Okay. On the merits, he says even if you presented the sub-market stuff, he didn't think that you'd made a case that this was a sub-market. What's wrong with that? I think he's wrong. I think that if the judge would have allowed me to go into a jury trial in this case, I would have been able to establish that evidence with the evidence that I already have. Okay. So you're objecting to the use of summary judgment. You think there is enough to get you to the jury? That's what I'm saying. Okay. Thank you very much. Thank you. Good morning, Your Honors. May it please the court. My name is Zach Madonia. I'm here on behalf of the defendants, Aravac and Mark Jones. There are several independent reasons why summary judgment should be affirmed. I'm going to address them in the following order. First, I'll address the fact that FLOVAC failed to introduce sufficient evidence to support its relevant product market. Second, I'll discuss one of the alternative grounds for affirming summary judgment, which is the fact that lobbying a municipality for favorable project specifications is not anti-competitive. And then finally, I'll discuss the tortious interference claim. So starting with relevant product market, it's axiomatic that the relevant product market consists of products that are reasonably interchangeable. This inquiry is a highly economic one focused on the behavior of consumers in the marketplace. Generally, courts look to the cross-elasticity of demand between potentially substitutable products in response to price or output changes. FLOVAC does not dispute that this is the appropriate analytical framework for addressing the relevant market. But as we just heard, FLOVAC argues that vacuum sewer systems are in a sub-market. And FLOVAC's implication is that it's easier to prove a sub-market than a relevant market. As this court understands, the test for proving a sub-market and the requirements are the same. And the district court found that as well in addressing FLOVAC's argument. So the issue on this appeal is whether FLOVAC came forward with sufficient evidence to create a genuine issue of fact, that the relevant product market can be limited to vacuum systems. To establish a genuine issue of fact, FLOVAC needed to come forward with sufficient evidence for a reasonable jury to find in its favor. And despite nearly two years of discovery, FLOVAC failed to do that.  At summary judgment, defendants came forward with evidence that demonstrated that, and this evidence was in the form of affidavit or deposition testimony from its employees. But the evidence demonstrated that all sewer systems serve the same purpose, that municipalities who are the relevant consumers of sewer systems, that they will evaluate vacuum and compare and contrast vacuum systems with other types before deciding which one to install. And that with respect to virtually every project AIRVAC has won, they face some competition from other types of sewer systems. This evidence wasn't controverted by FLOVAC. It's clearly probative of how consumers view the market. FLOVAC, by contrast, came forward with just two pieces of evidence. Your Honor, you asked counsel for FLOVAC what evidence was presented. He mentioned the one-sentence statement by FLOVAC's president, Hector Rivera. The other item of evidence that he brought forward was a list of AIRVAC's projects. FLOVAC didn't offer any economic expert testimony. FLOVAC didn't introduce any data about cross-elasticity of demand between these types of sewer systems. FLOVAC did not introduce any testimony for municipalities about how they view the market. This court doesn't even have to consider the two items of evidence that FLOVAC came forward with. The district court properly found that they weren't admissible at the time of summary judgment. FLOVAC actually didn't appeal those findings of the district court, which means it's waived its ability to appeal them now. But even if the court considers that evidence, it will see that it doesn't speak to the preferences of consumers and how they view the market, and thus it's not probative to the relevant market inquiry. What about the statements of other FLOVAC employees which counsel tell us are contained in depositions or affidavits? Your Honor, I believe you mean the other AIRVAC employees? Excuse me, the other AIRVAC employees. So it is true that FLOVAC attached as exhibits to its either counterstatement of facts or its separate statement of facts entire deposition transcripts for four of the AIRVAC employees. But simply attaching an entire deposition transcript is not the same as presenting that testimony to the district court. There was no reference to particular pages? No, Your Honor. If you read the whole transcript, it will support my contention. Right. That evidence, that particular evidence was never presented or identified for the district court. I think the anti-ferret rule in the District of Puerto Rico would prevent the court from having to dig it out. In any event, the testimony itself discusses differences between vacuum systems and other types, but it doesn't speak to how consumers view the market. Just because two systems are different doesn't mean that a consumer might not find them still to be reasonably interchangeable. Let me ask a sort of practical question. It seemed to me that what he was pointing at is if you have certain topography, certain geography, then it's actually just a sub-market that emerges because other types of sewage systems aren't actually appropriate once you have been given a certain geologic structure. And that that was the market in which he felt your clients had disadvantaged his company and he couldn't compete. That's the essence, I think, of his case. What's your response to that? Why should we look at the entire country when he's saying that isn't what's relevant? It's only these type of geographies. Your Honor, I have a couple of responses to that. First, FLOVAC didn't identify what particular topographies or geologies were better suited for vacuum technology. It just said there could be, though. It said there are some, but it did not identify what those were. In the brief, there's some identification. I'm not sure there's any in the evidentiary record. Right. But he does talk about particularly hilly terrain and things of that sort in the brief. Right. But you're saying that in the evidence that there's no identification of a particular topography? Right. In the evidentiary record, all that was presented to the district court was Mr. Rivera's one-sentence statement in which he said that vacuum sewer systems were more suitable for particular geographical and topographical areas. He didn't identify what those were. But the second point is, just because a technology is more suited for a given area, doesn't necessarily mean that other technologies won't work in response to a... Why do you say, yeah, I can agree with you about it doesn't necessarily mean, but I don't know what that has to do with a market, sub-market analysis. Well, the appropriate starting point is how consumers react and what products they consider to be interchangeable. And so a product could be more suited for a certain terrain, but that product may still be potentially suited for other terrains and in response to a price change, a material price change, the consumers might switch. So there's just no evidence on the record that consumers won't switch, even in areas that are arguably more suited for vacuum, that they don't nevertheless switch from vacuum to other types in response to a significant price change. The record is silent on that front. Well, I guess his argument is, look, in certain types of geographies, only this type of technology is available. You know, I've got a summer home. I had to put in a septic system. I was dependent on the contractors in the area. There weren't many. There were a few, and it was pretty much assumed that a particular type of septic system was most suited to being near a body of water. And so I think he's been trying to get at a concept like that, that all sewage systems everywhere in the country isn't refined enough. So our response, Your Honor, would be that the evidence on the record doesn't necessarily demonstrate the arguments you're making. That might be his argument. Okay. But the other point, Your Honor, is that at this point in time, it was FLOVAC's burden to come forward with sufficient evidence such that a reasonable trier effect could say that vacuum systems don't compete with gravity or low pressure or other types of systems in the U.S., which is the relevant geographic market. Okay. So in theory, my hypothetical might be there, but the actual evidence here was insufficient to sustain that. Insufficient for a reasonable jury to find in that favor. And, Your Honor, even with respect to your hypothetical, the fact that one system may be the preferred system for a given area still doesn't say what will happen if the price changes. And then maybe an alternative system. If there are no providers to come up with a lower price, I don't think that matters. Hypothetically, some could. Yeah. Yes. New entries aren't going to enter a small market and undercut the existing people there. Right. But, again, that's all of this discussion. There's no basis on the record for anything. Okay. Thank you, Your Honor. Thank you very much. All rise, please. The discussion of the honorable United States Court of Appeals is now recessed until 9 p.m. tomorrow morning. Thank you, Your Honor. Thank you.